**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| _____ ) | |
| In re: ) | Chapter 7 |
| ) | Case No. 16-14581-MSH |
| GALENEA CORP. ) | |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| GARY W. CRUICKSHANK, CHAPTER 7 ) | |
| TRUSTEE OF THE ESTATE OF ) | |
| GALENEA CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No.: 18-01184 |
| ) | |
| MARK BENJAMIN, DAVID NEAFUS, ) | |
| SUSUMU TONEGAWA, CHARLES ) | |
| POPKIN a/k/a CHARLIE POPKIN, ) | |
| TRITON RESOURCES, INC., and ) | |
| OTSUKA PHARMACEUTICAL CO., ) | |
| LTD. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF MARK BENJAMIN, DAVID NEAFUS, CHARLES POPKIN, AND TRITON RESOURCES, INC.

Defendants Mark Benjamin, David Neafus, Charles Popkin, and Triton Resources, Inc.

(the "D&O Defendants") submit this memorandum of law in support of their motion, pursuant to

Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6), to

dismiss all claims brought against them in the Complaint (ECF No. 1).

## I.   **PRELIMINARY STATEMENT**

In this adversary proceeding, the Plaintiff, Chapter 7 Trustee Gary W. Cruickshank (the

"Trustee"), seeks damages from the D&O Defendants on two principal theories: (1) the D&O

Defendants allegedly mismanaged the termination of the contractual collaboration between the

debtor, Galenea Corporation, and Otsuka Pharmaceutical Co., Ltd. and fraudulently transferred

certain assets to Otsuka; and (2) the D&O Defendants allegedly overpaid themselves and one of

Galenea's scientific advisors, Nobel Laureate Dr. Susumu Tonegawa, in breach of their fiduciary

duties to Galenea and various clawback remedies under the Bankruptcy Code and Massachusetts

state law.  These claims fail as a matter of law and must be dismissed, with prejudice.

As to the first set of claims, Galenea's principal creditor—Are-Tech Square, LLC (the

"Landlord")—already litigated the underlying facts in a separate state court lawsuit against

Galenea and Otsuka.  *See Are-Tech Square, LLC v. Galenea Corp. and Otsuka Pharmaceutical*

*Co., Ltd.*, Civil Action No. MICV2012-02796 (Middlesex Superior Ct. filed July 24, 2012).  The

Landlord lost at the summary judgment stage,[1] and the Appeals Court affirmed.[2]  The Trustee is

therefore precluded from pursuing claims arising out of the dissolution of the Galenea-Otsuka

collaboration, including claims that the transfer of assets from Galenea to Otsuka at the end of

that collaboration was fraudulent.  Dismissal of those claims is appropriate.

The other set of claims—alleging that the D&O Defendants are liable for supposedly

excessive compensation paid to them and Nobel Laureate Tonegawa—are legally deficient and

must be dismissed.  The breach of fiduciary duty claims cannot stand because the Trustee has not

---

[1] A copy of the memorandum and order allowing Otsuka's renewed motion for summary
judgment is attached hereto as Exhibit A.  A copy of the judgment that entered in Otsuka's favor
is attached hereto as Exhibit B.

[2] A copy of the Appeals Court's memorandum and order pursuant to Rule 1:28 is attached hereto
as Exhibit C.

alleged any specific facts about who approved the allegedly excessive compensation paid to the

D&O Defendants, nor has the Trustee alleged any specific facts plausibly suggesting that any

relevant decisionmakers had any disabling conflict of interest or were beholden to the person

whose compensation they approved.  Moreover, none of the claims based on purportedly

excessive compensation may proceed because they do not allege any specific facts—as opposed

to conclusory statements—plausibly suggesting that the compensation paid to the D&O

Defendants was unreasonable or that the D&O Defendants did not provide reasonably equivalent

value in services in exchange for their compensation.

Finally, dismissal of the Trustee's claims against the D&O Defendants should be with

prejudice and without leave to amend.  The Trustee had unlimited access to all the books,

records, and electronic files of Galenea for two full years before filing this Complaint.  That the

Trustee—after two years of investigating this matter with no restrictions on his ability to access

relevant information and documents—*still* has not pleaded a plausible claim against the D&O

Defendants means that these circumstances do not warrant an opportunity to replead.

## II.    RELEVANT BACKGROUND

In Landlord's Superior Court action against Galenea and Otsuka, the judge found, on

summary judgment, the following undisputed facts about Galenea's founding and its

collaboration with Otsuka:[3]

> Galenea is a biotechnology company that was organized in 2004. .
> .  .   It was founded by MIT Professor and Japanese Nobel laureate

---

[3] "[W]here the motion to dismiss is premised on a defense of *res judicata*—as is true in the case at hand—the court may take into account the record in the original action."  *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008); *see also Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) ("[A] court ordinarily may treat documents from prior state court adjudications as public records" and consider such records at the motion to dismiss stage).

Susumu Tonegawa ("Professor Tonegawa"). . . .  Prior to the
company's creation, Professor Tonegawa independently developed
biotechnology that could be used to generate treatments and
therapies for various neurological disorders. . . .  Professor
Tonegawa created Galenea for the purpose of utilizing this
proprietary technology.

In January 2005, Galenea entered into a Research, Development,
and License Agreement ("R&D Agreement") with Otsuka, a
Japanese-based pharmaceutical company, to collaborate on the
research and development of treatments for central nervous system
diseases. . . .  Pursuant to the R&D Agreement, Otsuka provided
funding to Galenea to develop the chemical compounds, and in
exchange, Galenea gave Otsuka the exclusive intellectual property
rights and the right to market the resulting compounds. . . .
Although Galenea was organized before any of the foregoing
agreements were executed, the company essentially only existed
on paper until Otsuka became Galenea's largest contributor. . . .

[Galenea and Otsuka] also entered into a Voting Agreement and
Stock Purchase Agreement, which permitted Otsuka to appoint two
representatives to Galenea's five-member board of directors and
authorized the purchase and sale of a minority share of Galenea
stock to Otsuka. . . .

During the collaboration, [Galenea and Otsuka] created the Joint
Chemistry Committee, also known as the Joint Medicinal
Chemistry Committee, which served as an advisory board and
made recommendations relating to the direction of the
collaboration's research. . . .  These recommendations were then
sent to the Joint Research Committee, which consisted of three
Galenea and three Otsuka representatives. . . .  This committee
made the final determinations. . . .  The Joint Research Committee
was also responsible for the winding down process that took place
at the end of [the Galenea-Otsuka] collaboration, including the
return of Otsuka' s equipment and the allocation of data and
intellectual property rights to Otsuka pursuant to the R&D
Agreement. . . .

From 2005 to 2011, Galenea received approximately $95 million
from Otsuka. . . .  Galenea's lack of funding from other entities was
due, in large part, to the restrictions placed upon it by the R&D and
Amended R&D agreements. . . .  Specifically, Galenea was
prohibited from using Otsuka's funding to finance collaborations
with third-party companies. . . .  Galenea did, however, receive
additional funding from government grants, which it used to
acquire independent research programs. . . .  Despite the

restrictions on the Otsuka funding, from 2005 to 2012, Galenea was engaged in a number of research programs that were outside the periphery of its collaboration with Otsuka. . . .

In 2010, Galenea learned that Otsuka was not extending their collaboration agreement past the December 31, 2011 termination date as stated in the Amended R&D Agreement. . . .  In order to facilitate this process, and pursuant to the [Galenea-Otsuka] agreements, Galenea immediately transferred a piece of equipment to Otsuka that it developed during the collaboration. . . .  This equipment was developed for Otsuka so that it could bring the biotechnology to their Japanese facility. . . .  There was also a second transfer of technology from Galenea to Otsuka, which occurred in late 2011 at the end of the collaboration. This transfer consisted of intellectual property, data sets, and chemicals. . . .  The R&D and Amended R&D Agreements contemplated these transfers and memorialized Galenea' s consent to transfer the developed technology to Otsuka. . . .

In addition to the transfers of technology and materials, in early 2011, Galenea began winding down its collaboration with Otsuka. . . .  This included having three-member board meetings without the two Otsuka board members present. . . .  This decision was made by Galenea and was supported by Otsuka.  Additionally, towards the end of 2011, the Joint Medicinal Chemistry and Joint Research Committees were disbanded. . . .

On July 27, 2011, Galenea's CEO and other executives met with [Landlord's] local representatives, Tom Andrews and Christopher Otey. . . .  During the meeting, Galenea stated that, despite having successfully developed a molecule for Otsuka to begin clinical trials, Otsuka was not extending its business relationship with Galenea beyond December 31, 2011.  Galenea also informed [Landlord] that it would be transferring the molecule to Otsuka, pursuant to Otsuka' s exclusive ownership rights, and that it was entitled to modest royalties from its future success. . . .  However, Galenea further stated that without Otsuka's continued contributions it would likely find itself without enough funding to support its entire commercial lease in 2012. . . .  Galenea informed [Landlord] that it was actively seeking funding from other pharmaceutical companies, but nevertheless, it would need to reduce its footprint by half. . . .  Over the following months, Galenea and [Landlord] participated in several meetings to monitor Galenea's financial status and to negotiate lease terms in order to keep Galenea in the building. . . .

> On December 31, 2011, the [Galenea-Otsuka] collaboration ended, and Galenea no longer received funding from Otsuka. . . .  Galenea has not worked on any additional research projects with Otsuka since. . . .
>
> In light of Galenea's financial insecurity, Galenea and [Landlord] amended the commercial lease for a third time on January 4, 2012 ("Third Amendment"). As with the prior lease agreements, Otsuka was not named as a party or as a tenant in the Third Amendment. . . . The Third Amendment gave Galenea an abatement of rent for six months—November 1, 2011 through April 30, 2012. . . .  The Third Amendment also gave [Landlord] the right to reduce Galenea's square footage. . . .  On March 6, 2012, [Landlord] exercised this right and delivered a partial termination notice; Galenea vacated a portion of the premises in May 2012. . . .
>
> On February 1, 2012, Galenea and [Landlord] entered into a Revenue Sharing Agreement, in which Galenea agreed to pay [Landlord] a portion of certain revenue it earned from collaborations with other companies. . . .  According to the agreement, Galenea was required to submit documentation evidencing transactions that were subject to the agreement. . . . In April 2012, Galenea publicly announced a collaboration with The Stanley Medical Research Institute and subsequently refused to submit to [Landlord] documentation of the transaction. . . .  In June 2012, Galenea similarly announced a collaboration With Eisai Co., and pursuant to the Revenue Sharing Agreement, [Landlord] believes it is entitled to $130,000 of the profits generated from this collaboration. . . .  Galenea has not paid [Landlord].

Exhibit A, at 2-7.

In its Superior Court action, Landlord asserted various claims against Galenea and Otsuka arising out of alleged breaches of the lease, its amendments, and the revenue sharing agreement between Landlord and Galenea.  In addition, Landlord alleged that certain transfers of intellectual property at the end of the Galenea-Otsuka collaboration (referred to in the Complaint as the "IP Transfer") constituted an avoidable fraudulent transfer.  The Superior Court (Tuttman, J.) allowed Otsuka's motion for summary judgment as to all claims.  As to the fraudulent transfer claim, the Court reasoned:

Here, [Landlord] contends that Galenea fraudulently transferred assets to Otsuka to avoid its obligations to [Landlord]; however, based on the summary judgment record, there is no direct evidence of an actual intent to hinder, delay, or defraud, nor are the circumstances such that a reasonable jury could infer such an intent. *See Palmer v. Murphy*, 42 Mass. App. Ct. 334, 345 (1997) ("'Actual intent' is usually proven circumstantially and inferentially."). Galenea made two transfers of assets to Otsuka pursuant to the R&D and Amended R&D Agreements. The more significant transfer, in December 2011, consisted of intellectual property rights, data sets, and chemical compounds. However, in July 2011, approximately five months before the transfer occurred, Galenea informed [Landlord] that (1) the collaboration with Otsuka was ending; (2) Otsuka retained exclusive ownership rights to the molecule it created; (3) the molecule was going to be transferred; and (4) Galenea was only entitled to modest royalties from it. Therefore, the transfer was not concealed but rather fully disclosed to [Landlord]. G. L. c. 109A, § 5(b)(3) (consideration given to whether transfer was disclosed or concealed). Furthermore, despite the unknown value of the molecule at the time of the transfer, Galenea still possessed substantial assets, such as millions of dollars in grant funding as well as other research platforms, all of which were disclosed to [Landlord] in July 2011. *Id.* § 5(b)(5) (consideration given to whether transfer was of substantially all of the debtor's assets). Additionally, at the time of the transfer, there was no pending suit or threat of litigation against Galenea. *Id.* § 5(b)(4) (consideration given to whether "before the transfer was made . . . the debtor had been sued or threatened with suit"). Therefore, since the summary judgment record contains no evidence indicating a genuine dispute with regard to [Landlord's] claim for fraudulent transfer, Otsuka's motion for summary judgment is ALLOWED with respect to Count VI.

Exhibit A, at 14. Judgment subsequently entered in Otsuka's favor on all claims asserted against

Otsuka. *See* Exhibit B.

The Appeals Court affirmed the judgment, holding as to the fraudulent transfer claim:

[Landlord] challenges the transfer of patent applications made by Galenea to Otsuka pursuant to their R&D agreements. [Landlord] had knowledge of the transfer when it was made, and the property transfer was in exchange for the funding given to Galenea by Otsuka pursuant to their R&D agreements. There was no evidence before the judge that would suggest that the transfer was made with actual intent to hinder, delay, or defraud [Landlord], nor is

7

there anything to indicate that Galenea did not receive reasonably
equivalent value in exchange.

Exhibit C, at 9.

Following the Galenea-Otsuka collaboration and after commencement of Landlord's

lawsuit, Galenea continued to generate revenue through other research collaborations and

government grants.  Indeed, even after the end of the Galenea-Otsuka collaboration, "Galenea

still possessed substantial assets, such as millions of dollars in grant funding as well-as other

research platforms."  Exhibit A, at 14.  In the three years prior to its bankruptcy filing—2014,

2015, and 2016—the revenue from Galenea's business activities totaled almost $10 million.  *In

re Galenea Corp.*, Case No. 16-14581, ECF No. 16 at 61 (Bankr. D. Mass. Dec. 16, 2016)

(Official Form 207: Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy).[4]

Galenea filed for Chapter 7 bankruptcy on December 1, 2016.[5]  Compl. ¶ 11.  As of the

date of the bankruptcy filing, Benjamin was the company's CEO, a position in which he had

served since 2007.[6]  Compl. ¶ 26.  Neafus was the company's CFO, a position he had occupied

since 2009.[7]  Compl. ¶ 28.  And Popkin was the company's sole director, having been so since

2013.  Compl. ¶ 29.

---

[4] The filings in the underlying bankruptcy case are "matters of public record" and the proper
subject of judicial notice, so they may be considered on this motion to dismiss.  *See Haley v. City
of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) ("We may augment these facts and inferences [in the
complaint] with data points gleaned from documents incorporated by reference into the
complaint, matters of public record, and facts susceptible to judicial notice.").
[5] Because the state court litigation was still pending at the time of Galenea's bankruptcy filing,
Landlord's claims against Galenea have been stayed since then by operation of the automatic
stay.  *See* 11 U.S.C. § 362.
[6] Benjamin had also served as a director of the company between 2007 and 2013.  Compl. ¶ 27.
[7] Although Neafus was CFO of Galenea, he was not an employee.  Instead, he rendered services
and was paid through Triton Resources, Inc., a Massachusetts corporation of which Neafus is the
sole officer and director.  *See* Compl. at 1. (identifying Triton as "Neafus' wholly-owned
company.")

On November 30, 2018, the Trustee commenced this adversary proceeding against the

D&O Defendants, Dr. Tonegawa, and Otsuka.  The D&O Defendants now move, pursuant to

Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6) to

dismiss all claims brought against them with prejudice.

## III.    <u>LEGAL STANDARD</u>

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[8]

the Court:

> must accept all factual allegations in the complaint as true and
> draw all reasonable inferences in [the plaintiff's] favor.
> *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.
> 2000). The complaint cannot be dismissed if [the plaintiff] has
> demonstrated a 'plausible entitlement to relief.'  *Sanchez v.*
> *Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (citing *Ashcroft*
> *v. Iqbal*, 556 U.S. 662, 678, (2009)).  Conclusory or speculative
> allegations, however, must be disregarded.  *Serra v. Quantum*
> *Servicing, Corp.*, 747 F.3d 37, 39–40 (1st Cir. 2014).

*In re Creutz*, No. 17-11933-MSH, 2018 WL 2733942, at *4 (Bankr. D. Mass. June 5, 2018).

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state

an actionable claim, such a motion may sometimes be premised on the inevitable success of an

affirmative defense." *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006).  Dismissal

predicated upon an affirmative defense requires "that '(i) the facts establishing the defense are

definitely ascertainable from the complaint and other allowable sources of information, and (ii)

those facts suffice to establish the affirmative defense with certitude.'"  *Id.* (quoting *Rodi v. S.*

*New Eng. School of Law*, 389 F.3d 5, 12 (1st Cir. 2004)).

---

[8] "Rule 12(b)–(i) F. R. Civ. P. applies in adversary proceedings."  Fed. R. Bankr. P. 7012(b).

IV.    **ARGUMENT**

### A.  The Trustee Is Precluded From Pursuing Claims Arising Out Of The Termination Of The Galenea-Otsuka Collaboration

One of Galenea's creditors—Landlord—has already tried to litigate the propriety of the

IP Transfer in the state court litigation against Galenea and Otsuka.  Otsuka won, final judgment

entered, and the judgment was affirmed on appeal.  In these circumstances, issue preclusion

(sometimes referred to as collateral estoppel) binds the Trustee to the undisputed facts

determined by the Superior Court and the Appeals Court in the earlier litigation.  Because those

facts preclude the Trustee from recovering on the breach of fiduciary duty claims against

Benjamin, Neafus, and Popkin arising out of the IP Transfer and the termination of the Galenea-

Otsuka collaboration, those claims must be dismissed.[9]

Under Massachusetts law, [10] "issue preclusion is appropriate to bar the [bankruptcy]

trustee from relitigating the same factual questions determined in [a creditor's] prior action" in

state court.  *Cruickshank v. MAPFRE U.S.A.*, 94 Mass. App. Ct. 662, 2019 WL 122947, at *3

(2019).  In *Cruickshank*, a bankruptcy trustee commenced a breach of contract action against an

insurer of the individual debtor.  *Id*. at *1.  The principal creditor of the debtor's estate had

previously pursued an action against the insurer arising out of the same events but under a

---

[9] The Trustee has not pleaded any breach of fiduciary duty claims against Triton.  To the extent that the Trustee asserts that Triton is liable to the Trustee on a breach of fiduciary duty theory, Triton asserts that dismissal of such a claim is proper because (1) Triton was never an employee, officer, or director of Galenea and owed Galenea no fiduciary duty, and (2) even if it did, any such claims against Triton would fail for the same reasons they fail against Benjamin, Neafus, and Popkin.  *See* Section IV.A-B.

[10] "[T]he Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state court judgment as another court of that State would give.  'Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]'"  *In re Hughes-Birch*, 499 B.R. 134, 149 (Bankr. D. Mass. 2013) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).  Here, because the prior litigation took place in Massachusetts Superior Court, Massachusetts law determines the preclusive effect of the prior judgment.

different legal theory—unfair claims settlement practices under Mass. Gen. Laws c. 93A and 176D—and lost at trial. *Id.* at \*1. In the subsequent action by the trustee, the Superior Court judge allowed the insurer's motion for summary judgment on issue preclusion grounds, and the Appeals Court affirmed, reasoning "though the trustee nominally represents the estate of the debtor . . ., he stands in that representative capacity for the benefit of the creditors of the bankrupt debtor's estate, of whom [the principal creditor] is the most prominent." *Id.* at \*3.

*Cruickshank* applies here to foreclose the Trustee's claims. The Trustee now asserts breach of fiduciary duty claims which arise from the same events as the state court litigation and which rely on factual allegations that were necessarily decided in the state court litigation. In particular, the Trustee asserts that Benjamin, Neafus, and Popkin:

- "authoriz[ed] the IP Transfer for no consideration, which allowed Otsuka to take control of substantial assets of Galenea and rendered Galenea insolvent," Compl. ¶¶ 351, 356;

- "allow[ed] Otsuka to terminate funding of Galenea, leaving Galenea unable to pay its debts as they became due," Compl. ¶¶ 351, 356; and

- "shield[ed] the IP Transfer from a fraudulent conveyance avoidance action," Compl. ¶¶ 351, 356, 363, 369.

The judgment in the state court litigation already resolved these exact factual allegations against Landlord, Galenea's principal creditor:

- As to the allegation that the IP Transfer was made for no consideration and allowed Otsuka to take control of substantially all of Galenea's assets, the Appeals Court concluded that "[t]here was no evidence before the judge that would suggest that the transfer was made with actual intent to hinder, delay, or defraud [Landlord], nor is there anything to indicate that Galenea did not receive reasonably equivalent value in exchange," Exhibit C, at 9, and the Superior Court judge concluded that at the time of the transfer, "Galenea still possessed substantial assets, such as millions of dollars in grant funding as well-as other research platforms," Exhibit A, at 14.

- As to the allegation that Benjamin, Neafus, and Popkin improperly "allow[ed] Otsuka to terminate funding of Galenea, leaving Galenea unable to pay its debts

as they became due," the Superior Court judge concluded that the collaboration between Galenea and Otsuka simply ended on its contractual termination date— December 31, 2011.  Exhibit A, at 5.

- As to the allegation that Benjamin, Neafus, and Popkin somehow "shielded" Otsuka from a fraudulent transfer action regarding the IP Transfer, both the Superior Court judge and the Appeals Court concluded that Landlord could not establish that the IP Transfer was fraudulent at all.  Exhibit A, at 14; Exhibit C, at 9.  Moreover, the fact that Landlord timely brought a fraudulent transfer claim against Otsuka as to the IP Transfer conclusively establishes that Benjamin, Neafus, and Popkin did not, in fact, do anything to "shield" Otsuka from such a claim.

And, as in *Cruickshank*, the losing party in the prior state court litigation—Landlord—is the most prominent creditor of the bankruptcy estate.  The Trustee has pleaded that the unsecured claims filed in the bankruptcy case total $3.1 million, Compl. ¶ 14, of which Landlord's claim accounts for nearly $2.9 million, over 90 percent of the total, *In re Galenea Corp.*, Case No. 16-14581, Claim 15-1 at 2 (Bankr. D. Mass. Apr. 10, 2017) (Landlord's proof of claim).  Nor would application of collateral estoppel against a limited subset of the Trustee's claims "deprive[]" any of the remaining *de minimis* creditors of Galenea "of a potential recovery."  *Cruickshank*, 2019 WL 122947, at *3 n.6.  Among other claims, the Trustee has asserted fiduciary duty, fraudulent transfer, and preference claims against the D&O Defendants, Dr. Tonegawa, and Otsuka which are based on entirely separate facts not decided as part of the state court litigation.  Although the D&O Defendants contend—for the reasons discussed more fully below—that these claims are also subject to dismissal as to them, application of collateral estoppel here does not preclude the other creditors of Galenea from having some prospect of recovery on other claims not already decided against Landlord in the state court litigation.

In these circumstances, just as in *Cruickshank*, "the trustee is in privity with [the principal creditor], under the theory of virtual representation, and the equities are such that he is barred by issue preclusion from litigating the same factual questions finally adjudicated

adversely to [the principal creditor]" in the state court litigation.  *See* 2019 WL 122947, at *3.

Accordingly, the breach of fiduciary duty claims against Benjamin, Neafus, and Popkin arising

out of the termination of the Galenea-Otsuka collaboration and the IP Transfer must be dismissed

because they rely on factual assertions that have already been finally adjudicated in their favor in

the state court litigation between Landlord and Otsuka.

That Otsuka and Galenea—and not Benjamin, Neafus, and Popkin—were the defendants

in the state court litigation is of no moment.  "Neither Federal nor Massachusetts law requires

precise identity or mutuality of parties for application of issue preclusion, at least when it is

raised defensively against complainants who had a full and fair opportunity to litigate all of their

grievances arising out of the same transaction at issue in both cases."  *Mancuso v. Kinchla*, 60

Mass. App. Ct. 558, 565 (2004); *accord Vargas-Colon v. Fundacion Damas, Inc.*, 864 F.3d 14,

28 (1st Cir. 2017) ("[A] defendant . . . who was not a party to the earlier proceeding may still

assert issue preclusion to prevent a plaintiff from asserting a claim the plaintiff has previously

litigated and lost against another defendant . . .  provided that the party against whom issue

preclusion is asserted has had a full and fair opportunity for judicial resolution of the same

issue") (internal citations and quotations omitted).  Here, because the Trustee—by virtue of

being in privity with Landlord—had a full and fair opportunity to litigate the claims at issue in

the state court case, Benjamin, Neafus, and Popkin may avail themselves of the defense of

collateral estoppel with regard to the claims asserted arise out of the IP Transfer and termination

of the Galenea-Otsuka collaboration.

Accordingly, Landlord's defeat—and the facts determined in connection with its defeat—

in the state court litigation means that collateral estoppel bars the Trustee from recovering on his

breach of fiduciary duty claims against Benjamin, Neafus, and Popkin arising out of the IP

Transfer and the end of Galenea-Otsuka collaboration.  Dismissal of those claims is therefore proper.

### B.  The Trustee's Breach Of Fiduciary Duty Claims Regarding Allegedly Excessive Compensation Are Not Adequately Pleaded

#### 1.  The Trustee Has Not Pleaded Who Approved The Allegedly Excessive Compensation Paid To The D&O Defendants, So Claims Related To Their Compensation Must Be Dismissed

As to the allegations that Benjamin, Neafus, and Popkin breached their fiduciary duties by authorizing and receiving allegedly excessive compensation, the Trustee has not sufficiently alleged that anything about the approval or payment of such compensation was improper.  In particular, the Complaint contains no specific facts about who approved the compensation paid to the D&O Defendants.  Nor does the Complaint allege that the person (or persons) who approved such compensation as to each of the D&O Defendants—whoever it was—had a disabling conflict of interest or was beholden in some way to the D&O Defendants.  The Complaint therefore does not plausibly state breach of fiduciary duty claims as to the compensation paid to the D&O Defendants, and those claims must be dismissed.

Under Delaware law,[11] a complaint for breach of fiduciary duty based on allegedly excessive compensation fails to state a claim when it fails to allege the identity of those who approved the compensation.[12]  *See Nelson v. Emerson*, No. CIV.A. 2937-VCS, 2008 WL

---

[11] Galenea is "a corporation organized under the laws of Delaware."  Compl. ¶ 1.  Delaware law therefore applies to the breach of fiduciary duty claims against Benjamin, Neafus, and Popkin. *See Nahass v. Harrison*, 207 F. Supp. 3d 96, 102 (D. Mass. 2016); *Harrison v. NetCentric Corp.*, 433 Mass. 465, 470-72 (2001).
[12] To plead a claim for breach of fiduciary duty based on allegedly excessive compensation:

> a plaintiff 'must either plead facts from which it may reasonably be inferred that the board or the relevant committee that awarded the compensation lacked independence (e.g., was dominated or controlled by the individual receiving the compensation), in which

1961150, at *9 (Del. Ch. May 6, 2008) (dismissing breach of fiduciary duty claims based on

allegedly excessive compensation where "[t]he complaint does not state who was on [the

company's] board at the time of the alleged excessive compensation or describe who—e.g., the

board or the board compensation committee—approved or acquiesced to the [defendants']

compensation"); *accord In re AgFeed USA, LLC*, 558 B.R. 116, 128 (Bankr. D. Del. 2016)

(claim for breach of fiduciary duty based on excessive compensation dismissed where "the

Complaint does not allege that [the officer] stood on both sides of the Employment Agreement's

approval"); *cf. In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 757 (Del. Ch. 2005)

("[Defendant] did not breach his fiduciary duty of loyalty by receiving the [employment

termination] payment because he played no part in the decisions."), *aff'd* 906 A.2d 27 (Del.

2006).

 Here, although the Trustee pleads in conclusory fashion that Benjamin and Neafus were

"paying themselves excessive salaries," Compl. ¶¶ 350-51, 356, and that Popkin "caus[ed]

and/or allow[ed] Galenea to pay him and other insiders excessive compensation" after the

Galenea-Otsuka collaboration ended in December 2011, Compl. ¶ 369, the Trustee pleads no

*specific* facts *at all* about who allegedly approved such compensation as to the D&O Defendants.

Nor does the Complaint contain any specific facts suggesting that Benjamin, Neafus, or Popkin

---

  event proof of such allegations would cast upon the officer the
  burden to prove that the compensation paid was objectively
  reasonable in the circumstances or plead facts from which it may
  reasonably be inferred that the board, while independent,
  nevertheless lacked good faith (i.e., lacked an actual intention to
  advance corporate welfare) in making the award.'

*Nelson*, 2008 WL 1961150, at *9 (quoting *Gagliardi v. TriFoods Intern., Inc.*, 683 A.2d 1049,
1051 (Del. Ch. 1996)).

actually approved their own compensation or misled or improperly influenced the person (or persons) who did approve their compensation.

Even at the pleading stage, the conclusory allegations the Trustee relies upon here do not suffice. *See Iqbal*, 556 U.S. at 678; *accord Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 222-23 (5th Cir. 2017) ("[T]he Trustee failed to plead with plausibility that the payment of cash bonuses constituted a fiduciary duty breach by any Officer or Director."); *In re AgFeed USA, LLC*, 558 B.R. at 128; *Nelson*, 2008 WL 1961150, at *9. The claims for breach of fiduciary duty based on allegedly excessive compensation paid to the D&O Defendants must be dismissed.

In addition, as discussed more fully in Section IV.C-D below, the Trustee has also not plausibly alleged that the compensation paid to the D&O Defendants actually *was* excessive. For this separate and independent reason, the breach of fiduciary duty claims against Benjamin, Neafus, and Popkin regarding allegedly excessive compensation must be dismissed.

> 2. The Trustee's Duty Of Care Claims Against Popkin Regarding The Payments To Nobel Laureate Dr. Tonegawa Are Barred By Galenea's Certificate Of Incorporation, And No Other Fiduciary Duty Claims Are Adequately Pleaded

In contrast to the inadequately pleaded allegations about who approved compensation for the D&O Defendants, the Trustee's Complaint—given the most generous reading possible—does plausibly suggest that Popkin approved payment of certain compensation to Nobel Laureate Dr. Tonegawa. *See* Compl. ¶ 66. But pursuant to the exculpatory clause in Galenea's certificate of incorporation,[13] Popkin's approval of compensation to Dr. Tonegawa cannot result in liability for breach of fiduciary duty absent a breach of the duty of loyalty or conduct not taken in good faith. The Complaint does not plausibly allege either, so the claim for breach of fiduciary duty

---

[13] A copy of the certificate of incorporation is attached hereto as Exhibit D. "[T]he Section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss (with or without filing of an answer)." *In re Century Elecs. Mfg., Inc.*, 345 B.R. 33, 36 (Bankr. D. Mass. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1092 (Del. 2001)).

against Popkin based on his approval of Nobel Laureate Dr. Tonegawa's supposedly excessive[14] compensation must be dismissed.

As permitted by 8 Del. Code § 102(b)(7), Galenea's certificate of incorporation exculpates its directors from all personal liability, with limited exceptions for, as relevant to Popkin's approval of compensation paid to Dr. Tonegawa, (1) breach of the duty of loyalty and (2) actions not taken in good faith. Exhibit D at 12. The Complaint contains no facts which plausibly suggest that Popkin violated his duty of loyalty or acted other than in good faith.

In the absence of allegations regarding self-dealing,[15] pleading that a director violated his duty of loyalty or failed to act in good faith requires plausible allegations that the director is dominated or controlled by the interested party.

> Directors are presumed to be independent, and it is ultimately Plaintiff[']s burden to demonstrate that the director is beholden to the controlling party or so under [the controller's] influence that [the director's] discretion would be sterilized. To overcome the presumption, it is not enough to observe that a director has some relation to a party benefiting from the decision. At this stage, a plaintiff must make provable allegations that, at a minimum, permit a reasonable inference that a relationship or tie is material to the particular defendant whose independence she is challenging. . . . The fact of compensation, even from both a parent and a subsidiary company, is not enough. Neither long-term board service nor the mere fact that one was appointed by a controller suffices.

*Friedman v. Dolan*, No. CV 9425-VCN, 2015 WL 4040806, at *6 (Del. Ch. June 30, 2015) (internal citations and quotations omitted).

---

[14] The Trustee also pleads no specific facts which suggest that the amount Galenea paid to Dr. Tonegawa was in any way excessive given that the arrangement permitted Galenea to identify Dr. Tonegawa—a Nobel Prize winning scientist and a professor at Massachusetts Institute of Technology—publicly as a member of its scientific advisory board.

[15] As discussed above in Section IV.B.1, the Trustee has pleaded no specific facts plausibly suggesting that Popkin approved his own compensation as a director.

The Complaint only alleges in conclusory fashion that Dr. Tonegawa appointed Popkin as a director and that Popkin received compensation for his services as a director.  These allegations, standing alone, do not plausibly suggest domination or control by Dr. Tonegawa over Popkin.  *See id.* ("The fact of compensation . . . is not enough); *see also Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("Thus, it is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director.").

The Trustee has not pleaded that any other business or personal relationship between Popkin and Dr. Tonegawa exists, let alone made any allegations that plausibly suggest that any such relationship rendered Popkin beholden to Dr. Tonegawa.  In the absence of such allegations, the Complaint does not plausibly suggest domination or control by Dr. Tonegawa over Popkin.  *See Friedman*, 2015 WL 4040806, at *6.

Accordingly, the Trustee has not plausibly alleged any breach of fiduciary duty claims against Popkin arising out of Popkin's approval of Dr. Tonegawa's compensation.  Dismissal is appropriate as to those claims.

3. The Fiduciary Duty Claims Based On Alleged Delay In Filing For Bankruptcy Cannot Stand

Finally, to the extent that the Trustee asserts some independent right to recovery on a breach of fiduciary duty theory because Benjamin, Neafus, and Popkin "delay[ed] the filing of the bankruptcy," *e.g.* Compl. ¶¶ 49-50, 55-56, 60-61, 351, 356, 363, 369, the claim has no legal basis.

> [B]usiness failure is an ever-present risk. The mere fact that a strategy turned out poorly is in itself insufficient to create an inference that the officers and directors who oversaw the strategy breached their fiduciar[y] duties. . . .  Even when a company is

> insolvent, its directors and officers may 'take action that might, if
> it does not pan out, result in the firm being painted in a deeper hue
> of red.' . . . The fact that a firm is insolvent does not mean that the
> company's officers and directors 'cannot choose to continue the
> firm's operations in the hope that they can expand the inadequate
> pie such that the firm's creditors get a greater recovery.'

*In re Fedders N. Am., Inc.*, 405 B.R. 527, 541 (Bankr. D. Del. 2009) (quoting *Trenwick Am.*

*Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 174, 193 (Del. Ch. 2006)).[16]  Stated

differently, "[i]t is settled Delaware law that an insolvent company is not required to turn off the

lights and liquidate when that company's directors believe that continuing operations will

maximize the value of the company."  *Nelson*, 2008 WL 1961150, at *2.

Here, the Complaint has one specific suggestion that the decision of Benjamin, Neafus,

and Popkin to keep Galenea operating rather than declare bankruptcy had some improper

purpose: the purported "purpose of shielding Otsuka from the avoidance of the IP Transfer to it

as a fraudulent transfer."  *E.g.*, Compl. ¶ 356.  But this allegation is wholly implausible because

Otsuka was *not* shielded from a fraudulent transfer action before Galenea declared bankruptcy.

In fact, Landlord *did* file fraudulent transfer action against Otsuka based on, among other things,

the IP Transfer.  And Otsuka won.  It follows that the alleged purpose of "shielding" Otsuka

from a fraudulent transfer claim by continuing to operate Galenea is wholly implausible and

cannot form the basis for a breach of fiduciary duty claim.

The Complaint's remaining allegations that Benjamin, Neafus, and Popkin breached their

fiduciary duties by continuing to operate Galenea instead of declaring bankruptcy merely allege

that they kept operating Galenea outside of bankruptcy to "enrich themselves, other insiders, and

select creditors."  Compl. ¶ 356.  But "the fact that the officers and directors continued to be

---

[16] By invoking this principle at the motion to dismiss stage, the D&O Defendants in no way
concede or admit that Galenea was insolvent at all times between the end of the Galenea-Otsuka
collaboration and the filing of the bankruptcy petition.

employed and compensated during this period, standing alone, is not sufficient to support a claim for breach of fiduciary duty." *In re Fedders N. Am., Inc.*, 405 B.R. at 541.  No breach of fiduciary duty claims can stand on the basis that Benjamin, Neafus, and Popkin continued to operate Galenea and, as a result, continued to be paid for their services.

The breach of fiduciary duty claims against Benjamin, Neafus, and Popkin must be dismissed in their entirety.

### C. The Complaint Does Not Plausibly Allege That The D&O Defendants Provided Less Than Reasonably Equivalent Value In Exchange For Their Compensation, So The Fraudulent Transfer Claims Must Be Dismissed

The Trustee asserts a variety of fraudulent transfer claims under various provisions of the Bankruptcy Code and Massachusetts' enactment of the Uniform Fraudulent Transfer Act.  All of these claims require a showing that the D&O Defendants did not render sufficiently valuable services to Galenea in exchange for their compensation.  But the Complaint's factual allegations do not plausibly allege that the D&O Defendants, by their service to Galenea, failed to deliver sufficient value to allow them to keep their compensation.[17]  The fraudulent transfer claims must be dismissed.

To succeed on the fraudulent transfer claims, the Trustee must prove that the D&O Defendants:

- did not receive their compensation from Galenea "for value and in good faith," *see* 11 U.S.C. § 548(a)(1)(A) & § 548(c); Mass. Gen. Laws c. 109A, § 5(a)(1) & § 9(a);

---

[17] Although the D&O Defendants maintain that the Complaint's factual allegations regarding the fraudulent transfer claims do not satisfy the ordinary pleading standard of Federal Rule of Civil Procedure 8, the actual fraudulent transfer claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See* Fed. R. Bankr. P. 7009; *De Prins v. Michaeles*, 189 F. Supp. 3d 209, 215 (D. Mass. 2016) (applying Rule 9(b) to actual fraudulent transfer claims).  For the same reasons discussed above that the Complaint's factual allegations do not state a claim under Rule 8, the actual fraudulent transfer claims must also be dismissed for failure to plead fraud with particularity under Rule 9(b).

- did not provide "reasonably equivalent value" in exchange for their compensation from Galenea, *see* 11 U.S.C. § 548(a)(1)(B); Mass. Gen. Laws c. 109A, § 5(a)(2); Mass. Gen. Laws c. 109A, § 6(a); or

- did not provide "new value" to or for the benefit of Galenea, Mass. Gen. Laws c. 109A, § 6(b) & § 9(f)(1).

"Case law has established that *payments of salary are presumed to be made for fair consideration,* and in order for a trustee to avoid them he must establish that the salary payments were in bad faith or the payments were excessive in light of the Defendants' employment responsibilities." *In re TC Liquidations LLC*, 463 B.R. 257, 268 (Bankr. E.D.N.Y. 2011) (emphasis added) (collecting cases). To survive a motion to dismiss, a complaint asserting fraudulent transfer claims based on allegedly excessive compensation must "describe how or why" the payments were excessive with specific facts. *In re AgFeed USA, LLC*, 558 B.R. at 129; *see also In re ATP Oil & Gas Corp.*, 711 F. App'x at 222 (affirming dismissal of fraudulent transfer claims because "[t]he Trustee does not explain how [the debtor's] compensation was excessive in comparison to other similarly sized public companies in the oil and gas industry at the time. Indeed, the Trustee offers no metric or explanation for finding the bonuses 'exorbitant.'").

The Complaint here does not meet that standard. The only specific allegation that Benjamin and Neafus received excessive compensation is that they were "paid the same or similar compensation as . . . prior to December 2011, yet after that date, Galenea was less than half its pre-2011 size and insolvent." Compl. ¶¶ 48, 54. But the Complaint includes no specific factual allegations plausibly suggesting that Benjamin's or Neafus' job duties and responsibilities changed in any way after December 2011 so that their receiving the same compensation was unjustified or in any way inappropriate. Without such facts, the mere comparison between compensation before and after December 2011 is wholly conclusory and

does not state a valid fraudulent transfer claim. *See In re AgFeed USA, LLC*, 558 B.R. at 129-30

("The Amended Complaint does not allege that [the defendant CEO] and the prior CEO or the

circumstances of their hiring were comparable, or even that they had the same 'employment

responsibilities.' Rather, the Trustee in conclusory fashion argues that simply because [the

defendant CEO] made twice as much as the previous CEO, the payments must be excessive. The

Amended Complaint's conclusory allegations are insufficient to survive a motion to dismiss.").

Similarly, the only specific allegation regarding the propriety of Popkin's compensation

is that "Popkin did very little work on behalf of Galenea, ultimately participating only in bi-

weekly conference calls with Benjamin and Neafus." Compl. ¶ 58. Nothing in the Complaint

plausibly suggests that bi-weekly conference calls with a company's CEO and CFO are

inadequate involvement for sole board member overseeing the executives of a company like

Galenea. Nor does the Complaint provide any relevant comparison between Popkin's activities

and compensation and the activities and compensation of the board members he replaced in

2013. Nor does the Complaint provide any relevant comparison between Popkin's activities and

compensation and the activities and compensation of board members at other, comparable early

stage life sciences enterprises. Again, without such specific facts, the wholly conclusory

allegations about Popkin's compensation do not state a valid fraudulent transfer claim. *See In re

AgFeed USA, LLC*, 558 B.R. at 129-30.

Moreover, the Superior Court judge has already determined facts suggesting that, after

December 2011, Galenea remained a going concern and that the D&O Defendants rendered

valuable services in their management of Galenea. As the Superior Court judge concluded,

despite the termination of the Galenea-Otsuka collaboration, "Galenea still possessed substantial

assets, such as millions of dollars in grant funding as well-as other research platforms." Exhibit A, at 14.

Galenea's own bankruptcy filing corroborates these facts. Galenea earned $3.41 million in revenue in 2014, $3.99 million in revenue in 2015, and $2.57 million in revenue in 2016 prior to filing its Chapter 7 petition on December 1, 2016. *In re Galenea Corp.*, Case No. 16-14581, ECF No. 16 at 61 (Bankr. D. Mass. Dec. 16, 2016) (Official Form 207: Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy). Put simply, serving as CEO, CFO, or sole director of a company with "substantial assets," federal government research grants and other significant research activities, and millions of dollars in annual revenue is not a no-show job warranting clawback of one's compensation on a fraudulent transfer theory.

Accordingly, the Complaint does not plausibly allege that the D&O Defendants did not provide sufficient value in exchange for the compensation they received from Galenea. All of the Trustee's fraudulent transfer claims must therefore be dismissed.

### D. The D&O Defendants Provided Services To Galenea In A "Contemporaneous Exchange For New Value," So The Preference Claims Must Be Dismissed

The Trustee has also sought to recover compensation paid to the D&O Defendants on a preference theory pursuant to 11 U.S.C. § 547. These claims must also be dismissed, for the Complaint and the filings in the underlying bankruptcy make plain that the D&O Defendants and Galenea intended that such compensation be "a contemporaneous exchange for new value" and that the compensation was "in fact a substantially contemporaneous exchange." *See* 11 U.S.C. § 547(c)(1).

The D&O Defendants held their positions with Galenea through the filing date of the Chapter 7 petition. Compl. ¶¶ 26, 28, 29. As discussed above, the D&O Defendants rendered valuable services in their management of Galenea through its bankruptcy filing. Throughout that

period, even after the termination of the Galenea-Otsuka collaboration, "Galenea still possessed substantial assets, such as millions of dollars in grant funding as well-as other research platforms." Exhibit A, at 14.  And Galenea earned almost $10 million in revenue in the three years prior to its bankruptcy filing. *In re Galenea Corp.*, Case No. 16-14581, ECF No. 16 at 61 (Bankr. D. Mass. Dec. 16, 2016) (Official Form 207: Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy).  Galenea's business activities were plainly substantial up to the filing date of the bankruptcy petition, meaning that the D&O Defendants provided "new value" by continuing to work for Galenea and manage its substantial business activities through the filing date.

Moreover, Galenea's bankruptcy filing establishes that the relevant compensation payments were periodic and in exchange for the D&O Defendants' ongoing work for Galenea. *See In re Galenea Corp.*, Case No. 16-14581, ECF No. 16 at 72-73 (Bankr. D. Mass. Dec. 16, 2016) (detailing payments to D&O Defendants).  Such regular, periodic payments of compensation for valuable services that concededly were rendered up to the date of the bankruptcy filings demonstrate that D&O Defendants and Galenea intended that such compensation be "a contemporaneous exchange" and that the periodic compensation payments were "in fact a substantially contemporaneous exchange." *See* 11 U.S.C. § 547(c)(1); *In re Molten Metal Tech., Inc.*, 262 B.R. 172, 178 (Bankr. D. Mass. 2001) (payments sufficiently contemporaneous for purposes of 11 U.S.C. § 547(c)(1) when made promptly upon becoming due and owing).

Accordingly, the Complaint and the documents properly the subject of judicial notice demonstrate that the exception in 11 U.S.C. § 547(c)(1) applies here.  The preference claims against the D&O Defendants must be dismissed.

### E.  The Illegal Distribution/Dividends Claims Are Inadequately Pleaded And Must Be Dismissed

Finally, the Trustee makes the bare-bones allegation that the compensation paid to the D&O Defendants "were a distribution to [the D&O Defendants] at a time when Galenea was insolvent, and accordingly, constituted illegal dividends/distributions."  Compl. ¶ 372.  For the reasons discussed above, the Complaint does not allege sufficient facts to state a claim that any of these payments were "illegal" in any way.  And this conclusory allegation cannot convert wholly legal compensation payments into recoverable amounts simply by relabeling them "dividends/distributions."  The "illegal dividends" claim must be dismissed.

Moreover, the Complaint does not allege that any of the alleged payments to the D&O Defendants were in any way connected to ownership of Galenea's stock such that they might constitute an "illegal dividend."  This claim must be dismissed for this reason as well.

Finally, as discussed above, the Complaint does not allege who specifically approved any particular payments to the D&O Defendants.  Delaware law only permits recovery for allegedly illegal dividends against "directors" who approve a dividend.  *See* 8 Del. Code § 174(a).  Without any allegation as to which "directors"[18] approved any allegedly illegal dividend, these claims must be dismissed on this separate and independent basis as well.

### F.  The Claims Against The D&O Defendants Should Be Dismissed With Prejudice And Without Leave To Amend

As shown above, the Trustee's pleading failures require dismissal of all claims asserted against the D&O Defendants.  Moreover, because the Trustee had unfettered access to *all* the books and records of Galenea for two full years prior to the filing of the Complaint, the Trustee

---

[18] Moreover, neither Neafus nor Triton was ever a director of Galenea, and Benjamin and Popkin were directors of Galenea at separate, non-overlapping times.  Even if the Complaint plausibly alleged any "illegal dividend"—and it does not—liability could only attach to the one director—either Benjamin or Popkin—who approved any specific allegedly "illegal dividend."

"has no excuse for the lack information about the alleged excessive compensation." *Nelson*, 2008 WL 1961150, at *10.

In *Nelson*, then-Vice Chancellor Strine—now Chief Justice of the Delaware Supreme Court—confronted similar facts involving a plaintiff that had access to all of a bankrupt corporation's records as a result of the bankruptcy proceedings in which he actively participated. The Chancery Court noted that plaintiff's failure to plead facts establishing his claims were "not at all excused by any lack of information on his part. For one thing, [the plaintiff] has had access to all of [the company's] books and records since March 2007 when he purchased the [c]ompany" out of bankruptcy. *Nelson*, 2008 WL 1961150, at *10.

Here, the Trustee's failure to plead the facts necessary to make out his claims against the D&O Defendants should similarly not be excused by this Court with an opportunity to replead. The Trustee has managed the affairs of Galenea since December 2016 with full and complete access to all of Galenea's books, records, and electronic files. And the Trustee waited until the last possible day to file this action against the D&O Defendants, so he had all the time the law affords him to make use of his unfettered access to these materials and investigate his claims.

Notwithstanding those two full years, the Trustee still filed a fatally flawed Complaint here. Another chance to plead is not warranted. The claims against the D&O Defendants should be dismissed with prejudice, without an opportunity to replead.

## V.   **CONCLUSION**

For these reasons, the D&O Defendants respectfully request that the Court allow their motion and dismiss all claims asserted against them in their entirety, with prejudice and without leave to amend.

MARK BENJAMIN, DAVID NEAFUS,
CHARLES POPKIN, and TRITON RESOURCES,
INC.

By their attorneys,

*/s/ Joshua N. Ruby*
T. Christopher Donnelly (BBO# 129930)
tcd@dcglaw.com
Joshua N. Ruby (BBO# 679113)
jnr@dcglaw.com
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880

Dated: February 4, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 4, 2019.

<u>/s/ *Joshua N. Ruby*</u>
Joshua N. Ruby